IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | : | |
| | : | Case No. 1:11-cr-025 |
| v. | : | |
| | : | Judge Susan J. Dlott |
| William Lee Allen, Jr., | : | |
| | : | Order Denying Emergency Motion for |
| Defendant. | : | Compassionate Release |

This matter is before the Court on the *pro se* Emergency Motion for Compassionate Release (Doc. 44) and the Supplement to Motion for Compassionate Release (Doc. 49) filed by and on behalf of Defendant William Lee Allen, Jr. Allen seeks compassionate release from prison due to the threat posed by COVID-19. The Government filed a Response (Doc. 52) in opposition to Allen's Motion. For the reasons that follow, the Court will **DENY** the Motion.

I. **BACKGROUND**

An arrest warrant was issued for Allen for distribution and possession of child pornography on February 15, 2011. (Doc. 2.) A grand jury issued an Indictment against Allen on February 16, 2011 charging him in two counts:

> (Count 1) Distribution of a visual depiction of child pornography after having been convicted previously of rape and gross sexual imposition in the Clermont County, Ohio Court of Common Pleas in case number 91-CR-5134, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1); and
>
> (Count 2) Possession of a visual depiction of child pornography after having been convicted previously of two counts of rape and gross sexual imposition in the Clermont County, Ohio Court of Common Pleas in case number 91-CR-5134, in violation of 18 U.S.C. § 2252(a)(4) and (b)(2).

(Doc. 7 at PageID 12–13.) To clarify, Allen had been previously convicted in state court in 1991 of the rape of a child and gross sexual imposition upon two other children. (Presentence Investigation Report ("PSR") at p. 8.) The victims were under the age of 10. (*Id.*) Allen served

1

a 15-year term of imprisonment in the Ohio Department of Corrections and was released on parole in May 2006. (*Id.*) Following his subsequent Indictment in this case, the Magistrate Judge ordered his dentention pending trial. (Doc. 9.)

In April 2011, Allen entered a Plea Agreement with the Government in which he agreed to plead guilty to Count 2 of the Indictment, possession of child pornography, which carried a penalty of a term of imprisonment of 10 to 20 years and a term of supervised release of 5 years to life. (Doc. 17 at PageID 43.) Allen also agreed to a Statement of Facts that the Court will restate here in full given the heinous nature of the crime and the relief Allen now seeks:

> On January 11, 2011, an undercover officer was conducting online session. On that date, the officer checked the "Chat" screen and observed that a person using screen name "STILLY2" had attempted to chat with him on December 28, 2010, January 2, 1011 and January 3, 1011. The chat attempts are listed below:
>
> > Stilly2 (28/12 11:45) > pw plz
> >
> > Stilly2 (Offline 02/0 1 14:14) > I am only on here to get to see things happen on cam. So if u don't plan on ever doing this with me hen don't request my pw or invite. I want live action pthc so ...
> >
> > Stilly2 (Offline 03/01 12:23) > I am looking for the most hard core child porn out there. None of that just put the head in shit, or daddy's slut that actually likes it. I want movies of big dicks raping little tiny holes, FULL PEN. No nice guy bullshit! If u have some plz plz plz get at me. Or if u would like to show me some live action I would just love it
> >
> > Stilly2 (Offline 03/01 12:50) > I am looking for the most hard core child porn out there.
>
> Continuing on January 11, 2011, the officer initiated a chat with "STILLY2" and he responded. During the chat, "STILLY2" expounded on his desires to look at child pornography and watch someone abusing a child. He further stated that he has prior experience abusing children and provided the undercover officer the password "pthcfun" in order to access his shared folder.
>
> Utilizing the password provided, the undercover officer gained access to "STILL Y2 's" shared files, where the officer observed 82 files available for download from his shared folder, all of which appeared to be movie files with descriptive titles indicative of child pornography. The undercover officer downloaded four video files from "STILL Y2."

2

> During this chat session, the undercover officer downloaded a video titled "5yo kait dad exctasy." This video is 39 seconds in length and depicts a prepubescent female, unclothed, with an adult male's penis in her mouth.
>
> The undercover officer identified the Internet Protocol (IP) Address used by "STILLY2" as 75.186.38.191, registered to Road Runner in Cincinnati, Ohio. It was ultimately determined that the subscriber associated with the IP address is William Allen, residing at 4441 W. 8th St., Apt. 3B, Cincinnati, OH 45238.
>
> On February 4, 2011, Homeland Security Investigations Special Agents conducted a query in the Electronic Sex Offender Registration and Notification (eSORN) system and found that William ALLEN Jr. is currently registered at the aforementioned address. ALLEN was convicted of Rape and Gross Sexual Imposition, with 3 victims, ages 10, 8 and 4, in Case Number 91-CR-5134 in the Clermont County (OH) Court of Common Pleas.
>
> On February 14, 2011, HSI Special Agents secured a search warrant for ALLEN's residence. Upon entry to ALLEN's residence several media devices were found. A preview of the computer being operated by ALLEN at the time agents made entry into his residence revealed the computer contained images and videos of child pornography. ALLEN made statements that the media he possessed did contain child pornography and that he traded child pornography using a peer-to-peer software.
>
> While forensic analysis is on-going as of March 15, 2011. However, it has thus far been determined that ALLEN possessed well over 600 images of child pornography. Many of the images and/or videos depict minor prepubescent children being sexually abused and/or posed in sexually explicit poses. Some of the images involve children being bound.
>
> All of the aforementioned conduct occurred within the Southern District of Ohio.

(Doc. 16 at 40–42.)

The Court adopted the PSR prepared by the United States Probation Officer without change. (Doc. 39 at PageID 110.) She determined that Allen was responsible for 11,603 images of child pornography, including some of sadistic and masochistic conduct. (PSR at p. 23.) She also found that he was a sexual predator who committed the instant offense after serving 15 years in state prison for rape and sexual imposition of minors and after completing a sex offender treatment program in prison. (*Id.*) She determined that Allen had a total offense level of 38 and a criminal history category of II, which ordinarily results in a Sentencing Guidelines calculation

3

of 262–327 months imprisonment. However, that sentencing calculation exceeded the statutory maximum sentence of 240 months. (*Id.* at p. 22.) The Probation Officer and the Government recommended that the Court impose the maximum sentence of 240 months, but Allen requested a sentence of 144 months followed by a term of supervised release of at least 12 years. (*Id.* at p. 24; Doc. 32 at PageID 78; Doc. 35 at PageID 87.) This Court sentenced Allen on March 6, 2012 to a 240-month term of imprisonment, with recommendations that he participate in an intensive sex offender treatment program, followed by a lifetime term of supervised release. (Docs. 37, 38.) Allen, currently age forty-nine, has served approximately half of his full-term of incarceration. He is incarcerated at FCI Milan and has an estimated release date of March 1, 2028. Federal BOP, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited 1/25/2021).

Allen filed the pending Motion for Compassionate Release on October 26, 2020. Counsel was appointed to him pursuant to General Order 20-21 of the Southern District of Ohio. (Doc. 47.) Counsel then filed a Supplement to the pending Motion. Allen seeks the Court to grant him compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), or alternatively, to recommend to the BOP that it transfer him to home confinement pursuant to the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (Mar. 2020). The Government opposes granting him compassionate release. The matter now is ripe for adjudication.

## II. STANDARD OF LAW

The Court lacks authority to resentence a defendant, except as permitted by statute. *United States v. Houston*, 529 F.3d 743, 748–749 (6th Cir. 2008). The compassionate release provisions in 18 U.S.C. § 3582(c)(1)(A) were "intended to be a 'safety valve' to reduce a sentence in the 'unusual case in which the defendant's circumstances are so changed, such as by

4

terminal illness, that it would be inequitable to continue the confinement of the prisoner.'"
*United States v. Ebbers*, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020) (quoting S. Rep. 98-225, at 121 (1983)). A defendant seeking sentence reduction bears the burden of proving entitlement to compassionate release. *Id.* at 426; *United States v. Hill*, No. 5:14CR337, 2020 WL 5104477, at *1 (N.D. Ohio Aug. 31, 2020). Section 3582(c) provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the Defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Exhaustion of administrative remedies is a mandatory claim-processing rule. *United States v. Alam*, 960 F.3d 831, 833–834 (6th Cir. 2020). Assuming that the inmate has exhausted administrative remedies, the district court must engage in the § 3852(c)(1)(A) analysis as follows: (1) the court must find that "extraordinary and compelling reasons" warrant a reduction; (2) the court must find that a reduction is consistent with applicable policy statements issued by the sentencing commission; and (3) the court must consider the relevant sentencing factors listed in § 3553(a). *United States v. Jones*, 980 F.3d 1098, 1101, 1106 (6th Cir. 2020). However, as to the second prong, the First Step Act rendered the only U.S. Sentencing

5

Commission Policy Statement potentially applicable to motions for compassionate release—U.S.S.G. § 1B1.13—inapplicable to cases filed by federal inmates. *Id.* at 1109, 1111. Therefore, the district court has full discretion to define "extraordinary and compelling reasons" without reference to the policy statement in § 1B1.13. *See Id.* at 1111; *United States v. Elias*, No. 20-3654, — F.3d —, 2021 WL 50169, at *2 (6th Cir. Jan. 6, 2021).

The § 3553 factors referenced in the statute include (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense; (3) the need to protect the public from further crimes of the defendant; (4) the sentencing guideline range; and (5) the need to avoid unwarranted sentence disparities among defendants with similar records guilty of similar conduct. 18 U.S.C. § 3553. These factors implicitly allow the Court to consider the amount of time served when determining if a reduction in sentence is appropriate. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020). District courts are encouraged to be "explicit and particular with their factual reasoning" when they consider the § 3553(a) factors. *Jones*, 980 F.3d at 1113.

### III. ANALYSIS

Allen seeks a reduction in his sentence, that is, compassionate release from prison, on the grounds that he is susceptible to the risk of severe illness or death if he contracts COVID-19. Allen satisfied the administrative prerequisites. He first requested compassionate release from the warden of FCI Milan on or about July 20, 2020, and the warden denied his request on September 1, 2020. (Doc. 44 at PageID 145–146.) The Court, therefore, turns to the 18 U.S.C. § 3582(c)(1)(A) analysis. The Court first must determine whether Allen's risk of serious illness or death from COVID-19 constitutes an extraordinary and compelling reason to release him from prison.

COVID-19 is caused by severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2) and was recognized as a pandemic in March 2020. Allen's concern about catching COVID-19 in prison is not unfounded. FCI Milan currently has 35 inmates and 16 staff who have tested positive for COVID-19, 226 inmates and 61 staff who have recovered from the virus, and 3 inmates who have died. *See* Federal BOP, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited 1/25/2021). However, courts in the Sixth Circuit have held that the existence of COVID-19 in society and the generalized risk of contagion in prisons standing alone are not sufficient to constitute extraordinary and compelling reasons for a reduction in sentence under § 3582(c). *See, e.g., United States v. Parks*, No. 3:18-CR-006, 2020 WL 7364982, at *3 (E.D. Tenn. Dec. 15, 2020) ("[T]he COVID-19 pandemic cannot alone justify compassionate release."); *United States v. Dorn*, No. 3:19-CR-014, 2020 WL 6343064, at *5 (S.D. Ohio Oct. 29, 2020) ("The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, . . . could not alone provide a basis for a sentence reduction.").

Allen asserts that he is at greater risk from COVID-19 because he has three pre-existing conditions: asthma, obesity, and pre-diabetes. The CDC recognizes that adults who are obese with a body mass index ("BMI") greater than 30 "are at increased risk of severe illness from the virus that causes COVID-19." CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last viewed 1/25/2021). Further, adults who are overweight with a BMI greater than 25 and adults with moderate-to-severe asthma "might be at an increased risk for severe illness from the virus that causes COVID-19." *Id.* The CDC does not identify "pre-diabetes" as

7

one of the known high-risk factors, though Type 2 diabetes mellitus and Type 1 diabetes mellitus are risk factors. *Id.*

Allen has only partially supported his factual assertion that he has three medical conditions that put him at higher risk for severe illness from COVID-19. As to his asthma, Allen provides medical records from FCI Milan. The records indicate that he had a "current" diagnosis of "Asthma" on April 18, 2016. (Doc. 44 at PageID 163.) Three years later, on May 17, 2019, Allen sought treatment from the health services department with complaints that he had had a cough for three weeks with chest pain and shortness of breath. (*Id.* at PageID 166.) The nurse noted that Allen reported a "history of asthma" and stated that he "use[d] his inhalers as prescribed." (*Id.*) The nurse prescribed prednisone tablets for five days for the asthma and to continue use of albuterol inhaler. (*Id.* at PageID 167–168.) The nurse ordered a chest x-ray, but the results of that x-ray were not provided to the Court. (*Id.* at PageID 168.) Allen was prescribed an albuterol inhaler and a mometasone furoate inhaler in 2019 and 2020. (*Id.* at PageID 169.) These records suggest that Allen has received appropriate medical care for his asthma while incarcerated. Unfortunately, the records do not establish whether Allen's asthma condition should be categorized as mild, moderate, or severe. The CDC specifically limits its caution about possible severe COVID-19 risk to people with moderate-to-severe asthma. CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last viewed 1/25/2021).

Regarding obesity and pre-diabetes, Allen did not mention these conditions in his request to the warden for compassionate release. (Doc. 44 at PageID 145.) Moreover, the Court cannot find any indication as to Allen's weight or a diagnosis of obesity or prediabetes in the FCI Milan medical records. Allen was 6-foot tall and weighed 205 pounds at the time the PSR was

8

completed in July 2011. (PSR at p. 2.) Based on an online government BMI calculator, Allen had a BMI of 27.8, which puts him in a category of overweight, but not obese. *See* CDC, *Adult BMI Calculator*, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited 1/25/2021). Allen simply has not proven with evidence that he is obese or suffers from prediabetes.

The Court will not find on this limited evidence that Allen's medical conditions put him at such risk for severe illness or death from COVID-19 to constitute an extraordinary and compelling reason for his early release from prison. The Court could require Allen to submit additional evidence regarding the existence and severity of his medical conditions, the precautions FCI Milan is taking to reduce the spread of COVID-19, and the prison's ability to provide adequate medical care to inmates who contract COVID-19. That step is unnecessary, however, because even if Allen's medical vulnerabilities constituted an extraordinary and compelling reason for release, the 18 U.S.C. § 3553(a) factors weigh against reducing his sentence.

The nature, circumstances, and seriousness of Allen's offense and his criminal history all weigh against reducing his sentence. Allen is a sexual predator. He committed the instant child pornography offense after spending almost 15 years in prison for rape and sexual imposition upon child victims. He requested "hard core porn" of children during the online chat with the undercover officer, and he had images with sadistic and masochistic content involving children when he was arrested. As to the need to protect the public, Allen asserts that that the BOP concluded in a PATTERN assessment that he presents a low risk for recidivism. (Doc. 44 at PageID 140.) He has not submitted evidence supporting this assertion, but it would not change

9

the Court's conclusion. Allen committed the instant offense after receiving sex offender treatment in state prison. The Court believes that Allen must serve his full sentence to best protect the public from the risk that he offends again.

The sentence imposed, 240 months, was the maximum allowed for a violation of 18 U.S.C. § 2252(a)(4) and (b)(2). However, 240 months was below the usual Sentencing Guideline calculation range for offenders with a total offense level of 38 and a criminal history category of II—262 months to 327 months. The Court believed in 2011 that 240 months was a fair sentence, and still believes today that it is a fair sentence. Allen has served only approximately half of that sentence. Reducing his sentence to provide him with compassionate release would result in a sentence that does not adequately reflect the seriousness of Allen's crime.

Finally, the Court will address Allen's argument that compassionate release is appropriate because district courts have granted compassionate release to other child pornographers. The cases cited by Allen have materially different facts. For example, Allen cites *United States v. Pagliuca*, No. 17-CR-432, 2020 U.S. Dist. Lexis 86932, at *2–4 (S.D.N.Y May 18, 2020), but the defendant therein had not engaged in contact offenses with children, had served 30 months of a 36-month sentence, and was almost 69 years old. Thus, his crimes were arguably less serious, he had served a proportionately greater amount of his sentence, and he was twenty years older than Allen. Similarly, the defendant in *United States v. Pippin*, No. CR16-0266-JCC, 2020 U.S. Dist. Lexis 88899, at *3, 5, 7 (W.D. Wash. May 20, 2020), had not committed a contact offense with children, had served 56 months of an 86-month sentence, and was housed at the prison with the worst COVID-19 outbreak in the country. Likewise, the defendant in *United States v. Feucht*, 462 F. Supp. 3d 1339, 1343 (S.D. Fla. 2020), had served 112 months, which was 86% of

10

his sentence, while the defendant in *United States v. Kirschner*, No. 1:10-cr-203, 2020 U.S. Dist. Lexis 124496, at *2 (S.D. Ind. July 15, 2020), had served 97 months of a 124-month sentence and was scheduled to be released in seven months. The Court is not persuaded that granting compassionate release to Allen is warranted in comparison to the cases he cites. Instead, the Court exercises its discretion to affirm that it imposed the appropriate sentence for Allen.

The Court also will deny Allen's alternative request for relief under the CARES Act. Section 12003(b)(2) of the CARES Act permits the Director of the Bureau of Prisons to lengthen the maximum amount of time he is authorized to place an inmate in home confinement. The Court will not recommend that the Director of the BOP place Allen in home confinement in lieu of serving out his sentence in prison for the same reasons it will not recommend compassionate release.

### IV. CONCLUSION

For the foregoing reasons, Allen's Emergency Motion for Compassionate Release (Doc. 49) is hereby **DENIED**.

**IT IS SO ORDERED.**

BY THE COURT:

_____
Susan J. Dlott
United States District Judge